Filed 8/27/15  In re A.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E063136 |
| Plaintiff and Respondent, | (Super.Ct.No. J255169) |
| v. | OPINION |
| T.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

Defendant and appellant T.H. (mother) is the biological mother of A.H. (minor), the subject of this dependency proceeding. Mother appeals from the juvenile court's orders denying her petition under Welfare and Institutions Code[1] section 388, and the termination of her parental rights by the juvenile court under section 366.26. For the reasons set forth below, we shall affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL HISTORY

Mother had a brief, two-week relationship with T.B., who is minor's alleged father. Mother did not know father's last name or where he lived. Father never had any contact with minor.

In December 2013, minor was born positive for amphetamines and a referral was made to San Bernardino County Children and Family Services (CFS). At the time, mother denied any substance abuse claiming she only took "holistic" medicines. Moreover, she denied a history of substance abuse although she had a drug charge in 2012 for being under the influence. When mother was five months pregnant, she was also arrested for possession of a controlled substance and smoking device, and obstructing/resisting a public officer. At that incident, mother initially identified herself with her mother's name. She was convicted on the obstruction charge and placed on summary probation until April 15, 2017. Mother was required to pay a $100 fine, but since she had no money, she spent three days in jail.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

In June of 2014, when minor was five months old, he sustained fractures of his right ulna and radius, which required casting. Mother, who was 31 years old at the time, gave several explanations for his injury. One of the explanations was that minor fell on his arms while he was crawling. Finally, she told the orthopedic surgeon that she did not know what happened. The doctor concluded that minor's injuries had been caused by tremendous force, which was not consistent with mother's various explanations. The nonaccidental nature of the injuries triggered a referral to CFS. Before minor was discharged and given a prescription, mother left the hospital. She claimed that she had to return the car to her stepfather.

On June 9, 2014, CFS filed a section 300 petition on behalf of minor alleging serious physical harm, failure to protect, severe physical abuse, and no provision for support. (§ 300, subds. (a), (b), (e) & (g).) On June 10, 2014, the juvenile court found that a prima facie case was established. The court detained minor with foster parents and ordered supervised visitation twice a week for two hours each. The court also ordered mother to drug test that day.

The jurisdiction/disposition report filed June 27, 2014, recommended that minor be placed in out-of-home care, mother not receive any reunification services, and a section 366.26 hearing recommending adoption be set.

The social worker interviewed mother on June 17, 2014. Mother claimed that minor was standing on the bed, supported by pillows. When mother turned away, minor fell to the floor and landed on his back. He cried for a few minutes then seemed to be fine. A few hours later, however, mother noticed that minor's arm appeared injured so

she took him to the emergency room. Mother claimed that the reason she had given hospital personnel different explanations for the injury was that she did not want her mother to be upset with her.

Another social worker visited mother's home on June 19, 2014. Mother explained and demonstrated that minor had been crawling on his hands and knees on the carpeted floor and fell on his arms.

A pediatrician from the Children's Assessment Center (CAC) requested a CT and skeletal survey of minor to be done at Loma Linda University Medical Center (LLUMC). The tests were done on June 6, 2014. There were no additional injuries or concerns revealed by the tests. Minor was discharged.

Minor had lived with his mother, who was unemployed since 2011, and his maternal grandparents since birth. The maternal grandmother (MGM) stated that she did not have any concerns about minor's safety with his mother, but maternal grandparents would not allow mother to leave the home with him. MGM visited minor with mother. The family was happy to spend time with minor and he responded favorably to their affection and attention.

Mother set the jurisdiction/disposition hearing contested. On July 7, 2014, mother refused to sign the consent for a CAC examination; on July 8, 2014, the juvenile court authorized the medical exam.

CFS filed an additional information on August 12, 2014. The CAC exam findings indicated neglect and physical abuse. Furthermore, the histories given by mother to CFS

4

were not consistent with an infant's development. The CAC report concluded that the fractures were inflicted injuries.

Mother failed to show for her drug test on July 25, 2014. At the further pretrial settlement conference on August 22, 2014, the court authorized placement of minor with the maternal grandparents. Mother was not to call the home or stop by the house, and MGM was ordered not to supervise the visits.

CFS filed an additional information on August 26, 2014. Mother failed to show for her three drug tests between July 25, 2014, and August 14, 2014. The social worker also reported that when she questioned minor's lack of bruises, Dr. Massi of CAC advised her that the absence of bruising was common with fractures. The fracture most often associated with bruising was a skull fracture.

At the contested jurisdiction hearing on August 29, 2014, mother's counsel proceeded via argument. Counsel argued that mother was objecting to all the allegations that referenced her because she was consistent throughout the case that she did not physically abuse minor. County counsel argued minor's injuries were not consistent with mother's explanations, or consistent with minor's age of five months. Furthermore, when Dr. Young at LLUMC examined minor—minor did not crawl, but scooted. He also did not stand. The court found jurisdiction under section 300, subdivisions (a), (b), (e), and (g). The court clarified it found allegation (e) true by clear and convincing evidence.

At the contested disposition hearing on September 18, 2014, mother testified that she did not discuss physical abuse with her counselor. Mother also testified that she visited minor twice a week for an hour each. During her visits, mother played with

5

minor, including watching YouTube videos.  Mother also played classical music for minor.  Mother denied having a substance abuse problem.  She testified, however, that she was going to attend an outpatient drug program because she had missed a drug test.

The social worker testified that at the visits, mother was excited to see minor, but minor's response was neutral, which was his response to most people.  Mother had been cooperative with the social worker except that mother had not responded to phone calls from Inland Valley Recovery Services and did not comply with all of her random drug tests.  Mother had missed four tests.

The court found that section 361.5, subdivision (b) (reunification by-pass provisions) applied.  The court found that mother failed to meet her burden to demonstrate that services would be beneficial.  The court noted that mother was unwilling to discuss with her counselor how mother had injured minor.  The court was concerned with mother's testimony that she did not believe she did anything wrong other than take her eyes off minor.  Furthermore, mother failed to advise the social worker that mother would be enrolling in an outpatient drug program.  The court also found mother did not meet her burden of proving that failure to provide reunification services would be detrimental to minor.

The court ordered no reunification services to mother, placed minor with maternal grandparents, and ordered a section 366.26 hearing to determine minor's permanent plan.  The court ordered supervised visitation twice weekly for one hour, with authority to CFS to liberalize as to frequency and duration.

Mother filed her notice of intent to file an extraordinary writ. Mother's counsel, however, filed a letter brief explaining that counsel would not file a writ on mother's behalf because there were no legal or factual issues upon which to base a writ. We dismissed mother's petition on October 24, 2014.

In the section 366.26 report filed January 14, 2015, CFS recommended that parental rights be terminated and the permanent plan of adoption be implemented. At the time of the report, minor was 13 months old and developmentally on target. He was attached to his prospective adoptive parents—his maternal grandparents. He had lived with them since birth except for the brief time that he was in foster care while the grandparents' home was being assessed for placement.

Mother visited regularly and brought activities for minor. Minor enjoyed the visits, and arrived at and departed from visits without distress.

Minor was an appropriate child for adoption since he was only one year old and being adopted by his maternal grandparents with whom he had lived nearly his entire life. The maternal grandparents had a 17-year-old child who lived with them. MGM had two children, including mother, from two previous marriages. MGM was a homemaker and did not need childcare for minor. Both grandparents were in relatively good health. The grandparents wanted to legalize their parental relationship with minor.

At the section 366.26 hearing on January 16, 2015, mother set the matter contested. Mother's counsel informed the court that he would be filing a section 388 petition to modify a previous court order denying services. The court set a date to

7

consider prima facie evidence since reunification services were bypassed. The court informed counsel that mother must present clear and convincing evidence.

On January 30, 2015, mother filed her section 388 petition requesting that the court order reunification services for her. The court ordered a hearing on March 10, 2015. Between the filing of the petition and the hearing to establish a prima facie case on March 10, 2015, mother also provided (1) copies of the medical records from Arrowhead Regional Medical Center (ARMC), a visitation log dated December 17, 2014, describing a positive visit, a certificate of participation in a parenting case dated March 5, 2015, a letter from a marriage and family therapist trainee dated March 6, 2015, indicating that mother had completed five sessions between January 26, 2015, and March 6, 2015; and (2) a letter dated February 12, 2015, from Inland Valley Recovery Services verifying that mother entered a residential treatment program on January 26, 2015.

In CFS's response to mother's section 388 petition, the social worker noted that mother had given several different explanations for minor's injury. ARMC was the mandated reporter that contacted the Child Abuse Hotline. Mother initially told the reporting party that minor was "standing" and fell backwards. Minor stretched out his arm to catch his fall. Mother then reported that minor was crawling on his arms and legs and sometimes would "leap" and he would hurt himself while "leaping." Minor's fractures of the right ulna and radius were not consistent with mother's explanations. CFS's response further noted that in the detention report of June 10, 2014, mother told ARMC's triage nurse that minor was walking along the furniture, tripped and fell backwards. Mother then told the ER nurse that minor was crawling, rolled onto his side

8

and broke his arm. When the physician's assistant examined minor, mother told the physician's assistant that minor crawled, leaped then fell. When the orthopedist confronted mother with the inconsistencies between their stories and the injuries, mother stated, "then I don't know what really happened."

Mark Massi, a pediatric forensic specialist at CAC, examined minor on July 8, 2014. Dr. Massi reported that the histories of the injuries were not consistent with minor's development and concluded that "the radius and ulnar fractures were inflicted injuries." (Italics omitted.)

At the time of the response, mother was still unemployed and without stable housing. When mother visited minor, MGM provided the water, food, diapers, toys, and other items for him at each visit. The social worker observed one visit where MGM gave mother $20. Although MGM thought minor was safe in mother's care, when mother and minor lived with the maternal grandparents they would not allow mother to leave the house alone with minor.

The response concluded that mother had shown a consistent pattern of neglect, and her substance abuse impaired or limited her ability to provide adequate care and supervision of minor.

At the hearing on March 10, 2015, minor's counsel argued that the initial issues were still being addressed since mother had not completed any programs. Given the initial allegations of physical abuse, it was not appropriate to delay minor's permanence for possible reunification with mother. The court found that there was no change of circumstances and granting the petition would not promote minor's best interests. The

9

court denied the petition stating that the petition failed to establish a prima facie case. The petition and its attachments did not address the issue of physical abuse to minor. Furthermore, mother never accepted responsibility for minor's injuries.

The court then proceeded to the section 366.26 hearing. Relying on the December 17, 2014, visitation log (one visit), mother's counsel argued that the parental benefit exception to adoption was applicable in this case. Counsel asked that the court order guardianship as minor's permanent plan.

Counsel for both CFS and minor argued that mother's visits took place in a supervised setting and had not progressed beyond that. Moreover, minor had been living with his maternal grandparents nearly his entire life of 15 months, and out of his mother's care for nearly 10 months.

The court did not find that the parental benefit exception to adoption applied in this case. Mother failed to show that minor would the "harmed, much less greatly harmed," if mother's parental rights were terminated. The court found by clear and convincing evidence that minor would be adopted. The court ordered the termination of parental rights and adoption as minor's permanent plan. Mother filed this appeal.

## DISCUSSION

A.     <u>THE JUVENILE COURT PROPERLY DENIED MOTHER'S SECTION 388 PETITION</u>

In her section 388 petition, mother requested the court to order reunification services. The court denied her section 388 petition. On appeal, mother contends that the trial court erred in denying her section 388 petition.

10

This court reviews a trial court's decision on whether to grant a section 388 petition for abuse of discretion. The judgment below will not be disturbed except on a showing that the court made the determination in an arbitrary, capricious, or patently absurd manner. "'"'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416.)

A parent may seek to modify a court order by filing a section 388 petition alleging changed circumstances or new evidence, and that the proposed modification is in the child's best interest. (§ 388, subd. (a); *In re Jasmon O.*, *supra*, 8 Cal.4th at pp. 414-415.) A parent's burden of proof with a section 388 petition, where a section 361.5, subdivision (b), bypass was applied at disposition, is clear and convincing evidence that the proposed change or order serves the child's best interests. (§ 388, subd. (a)(2).)

### 1. *CHANGED CIRCUMSTANCES*

On appeal, mother contends that she "offered abundant evidence of changed circumstances." Here, "[t]he primary issues which initiated dependency proceedings were the injury to [minor] and mother's substance abuse issues." In her petition, mother argued that despite being denied services by the court, on her own initiative she enrolled in services to address the issues of the petition. She attended drug treatment programs, parenting classes, and individual therapy.

Mother attached to her petition medical records from ARMC's emergency department, which stated "low suspicion for child abuse," as evidence of her contention

11

that she did not abuse minor. However, mother failed to mention that this injury triggered a call to the Child Abuse Hotline by the personnel at ARMC. Moreover, mother failed to address the records from LLUMC and CAC. The emergency room physician at LLUMC opined that the injury was a result of non-accidental trauma. Dr. Massi interpreted minor's history, exam and diagnostic studies to be a result of neglect and physical abuse. Dr. Massi noted that the histories of the injuries were inconsistent with minor's development; thus, the radius and ulnar fractures were inflicted injuries. The doctor also noted that minor's exposure to mother's substance abuse constituted neglect, and mother's decision not to vaccinate minor placed him at risk of serious, preventable illnesses.

Mother provided no evidence to counter the overwhelming evidence of physical abuse, or evidence to show that she had ameliorated the problem. Mother had given several explanations as to how the injuries occurred. Now mother argues that she was not the cause of minor's injuries and that she did not see how he was injured; she was simply hypothesizing the various scenarios as to how the injuries occurred. Mother's argument, however, does not make sense unless mother left minor alone on the room. Here, mother claimed that she was in the room with minor but had turned away when the injuries occurred. Before mother turned away from minor, she would have been aware if he was on the bed leaning against a stack of pillows, had been crawling on the floor, or was walking along the furniture.

Mother also argues that Dr. Massi's conclusion has no medical basis and "completely ignores the very realistic possibility that a child can break a radius and ulna

12

in a fall." Mother's brief cites to a website discussing the causes of broken forearms in children, not infants. Mother misses the mark. Here, the crux of Dr. Massi's conclusion was that a five-month-old infant, such as minor, was not developmentally capable of engaging in behaviors mother described. Thus, the only way minor could have suffered these fractures was by "inflicted injuries." Dr. Massi was a forensic pediatric specialist at CAC; he was an expert on inflicted versus accidental injuries. As a pediatrician, he was aware of the developmental motor stages of an infant and child. Mother provided no evidence to counter Dr. Massi's developmental argument.

The law is clear that mother had the burden of showing changed circumstances in her section 388 petition. Mother, however, argues that even though she failed to produce evidence that she passed a polygraph test in support of her petition, CFS should have produced evidence of a failed polygraph test. Mother's argument fails since under section 388, a juvenile court's order may be changed or set aside if the *petitioner* "establishes by a preponderance of the evidence" that changed circumstances or new evidence exist. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.)

Moreover, mother provided evidence that she enrolled in an inpatient drug treatment program on January 26, 2015; she filed her section 388 petition four days later. Four days of drug treatment with a history of drug abuse does not constitute a change of circumstances.

A letter dated February 12, 2015, from Inland Valley Recovery Services, was attached to mother's petition; it provided that mother was meeting with a therapist once a week. But mother had only been in the treatment program for two weeks. Additionally,

13

there was no indication that child abuse was a core issue discussed in therapy. The letter stated that mother's treatment plan goals were trust, healthy boundaries, and improved communication with family. The dependency was initiated mainly because of physical abuse; it was not addressed in therapy.

In finding that mother had failed to establish changed circumstances, the court stated: "The Court is going to deny the 388. . . . And that is because it reflects nothing within the documents that genuinely address the issue of physical abuse to [minor]. [¶] The mother attaches some records noting that she is a somewhat reliable historian. The mother notes in the 388 that there was a low suspicion of abuse noted in the [ARMC] documents. And further, that she passed the polygraph and was not charged criminally. The Court has nothing attached to it that supports that. [¶] And moreover, the subsequent investigation of this revealed that Mother was telling conflicting stories as to what had happened, that the mother, ultimately when she was confronted by an orthopedist at [ARMC] with respect to the consistency of her story, indicated, 'Well, then, I don't really know what happened.' [¶] And mother has never demonstrated, and certainly not demonstrated in this 388, that she has accepted responsibility, and that she has understood the nature of this serious physical abuse and addressed that issue with what she has done. [¶] The Court finds, therefore, that there is no change in circumstances reflected to demonstrate the granting of an evidentiary hearing under section 388."

Although the record demonstrates that the juvenile court held a hearing on the section 388 petition, mother, in her reply brief, appears to be arguing that the court erred

in denying her section "388 petition solely on the written submissions. The juvenile court's failure to hold a hearing denied mother the right to due process, and was an abuse of discretion." Mother appears to be suggesting that the juvenile court refused to consider additional evidence in support of her petition—that is, evidence other than the evidence included in her petition.

Mother's argument is without merit. Here, there is no indication that the juvenile court refused to consider any additional evidence on mother's petition at the hearing on the petition. To the contrary, at the March 10 hearing, the court stated: "The matter is here this morning for a PSC, but the Court has the 388 that was filed on February 3 by [mother] with respect to this matter seeking reunification services. [¶] . . . [¶] The court has received a certificate—an attached letter from IVRS, two letters. And the Court is going to attach that to the 388 of [mother]. [¶] Any objection to that?" Mother's counsel responded: "No. We would actually request that the Court attach that. They essentially supplemented the 388. They were all received after Mom filed her 388.' The court then asked if mother's counsel had "anything else to add" to the petition. Mother's counsel stated: "As to the 388, nothing to add, except a request that the Court grant Mom's 388. [¶] . . . [¶] I don't have any additional documentation today. So I would submit on my comments and arguments and, again, ask that the Court grant Mom's 388. She was asking that she be provided with services to reunify with [minor.]"

Thereafter, the juvenile court denied the petition after hearing argument from CFS and minor's counsel. At no time did mother's counsel ask the court to hear any live testimony, allow mother to cross-examine any witnesses, or consider any other evidence.

15

Mother's counsel had every opportunity to proffer her testimony and any other evidence, but did not do so.

Mother's reliance on *In re Clifton V.* (2001) 93 Cal.App.4th 1400, in her reply brief, is misplaced. There, it was held that the juvenile court abused its discretion in refusing to hear mother's testimony or allow her to cross-examine other witnesses. The appellate court noted that former California Rules of Court, rule 1432(f) (currently Cal. Rules of Court, rule 5.570(h)), "provides for a live hearing on a section 388 petition 'if . . . there is a due process right to confront and cross-examine witnesses. . . .'" (*Clifton V.*, at p. 1404.) Here, however, Mother's counsel did not proffer any live testimony and did not seek to cross-examine any witnesses. There is therefore no merit to mother's claim that the court's failure to hold a hearing denied her the right to due process.

In sum, the juvenile court did not deny mother's petition without a hearing. The court held a full evidentiary hearing on the petition, and mother had every opportunity to present additional evidence at the hearing but did not do so.

Based on the above, we find that the juvenile court properly found that mother had failed to demonstrate changing circumstances, let alone changed circumstances.

2. *BEST INTEREST OF THE CHILD*

In addition to the lack of changed circumstances, mother also lacked evidence in her section 388 petition that her request served the best interests of minor. When considering whether granting the request would serve a child's best interests, there are three factors to consider: (1) the seriousness of the problem that led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds

between the dependent children to both parent and caretaker; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.) After family reunification services are terminated, the focus shifts. The best interest of the child and child's need for a permanent and stable home are paramount. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.)

As to the first factor, the seriousness of the problem that led to the dependency, mother was responsible for the broken bones minor suffered. She, however, never accepted responsibility. Instead, she proffered multiple scenarios on how minor sustained the injuries. As noted above, Dr. Massi, a pediatric specialist, opined that minor was incapable of injuring himself in the ways mother explained at only five months of age.

The second factor requires analyzing the strength of bonds between the child and his caretakers, and the child and mother. When minor was born, he and mother lived with his caretakers, the maternal grandparents. After mother moved out because of the dependency, minor continued to live with his caretakers, without mother, for 10 months.[2] The social workers noted that minor was attached to his grandparents, who provided him with a stable and loving home. The court noted, "granting the 388 would not promote the best interest of [minor], given how [he] is doing, given the current stability that he has free of any personal physical abuse, that that second prong is not met as well."

---

[2] The child resided for a brief time in foster care while the grandparents' home was being assessed for placement.

17

The third factor involves addressing the degree to which the problem may be easily ameliorated, and the degree to which it actually has been. Again, as stated above, this dependency involved physical abuse and substance abuse.

The issues were not easily ameliorated because mother has failed to accept responsibility for the injuries to minor. Moreover, mother could not show that she was now free of substance abuse. As noted *ante*, mother had only recently begun addressing her substance abuse issues.

Application of the three factors enumerated in *In re Kimberly F.* demonstrates that mother's request for reunification services did not meet minor's best interests. This is especially clear given that mother must prove best interest by clear and convincing evidence since this is a family reunification bypass. (§ 388, subd. (a)(2).)

In sum, based on the above and the juvenile court's thoughtful decision, we cannot say that the decision was arbitrary, capricious, or absurd. In fact, it was well within the bounds of reason. Based on the facts discussed above, we cannot say that the trial court abused its discretion in denying mother's section 388 petition.

B.     THE PARENTAL BENEFIT EXCEPTON DID NOT APPLY

Mother claims that the juvenile court erred when it terminated her parental rights because the parental benefit exception applied.

In general, at a section 366.26 hearing, if the juvenile court finds that a child is adoptable it must terminate parental rights. (§ 366.26, subds. (b)(1) & (c)(1).) This rule, however, is subject to a number of statutory exceptions (§ 366.26, subds. (c)(1)(A) & (c)(1)(B)(i)-(vi)), including the beneficial parental relationship exception, which applies

18

when "termination would be detrimental to the child" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

"When applying the beneficial parent-child relationship exception, the court balances the strength and quality of the parent-child relationship in a tenuous placement against the security and sense of belonging that a stable family would confer on the child. If severing the existing parental relationship would deprive the child of 'a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.'" (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1234-1235.)

"'[F]or the exception to apply, the emotional attachment between the child and parent must be that of parent and child rather than one of being a friendly visitor or friendly nonparent relative, such as an aunt.'" (*In re Jason J.* (2009) 175 Cal.App.4th 922, 938.) The parent must show more than frequent and loving contact or pleasant visits. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 229.) "'A biological parent who has failed to reunify with an adoptable child may not derail adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be *beneficial to some degree*, but that does not meet the child's need for a parent.'" (*Jason J*., at p. 937.)

"The parent contesting the termination of parental rights bears the burden of showing both regular visitation and contact and the benefit to the child in maintaining the parent-child relationship." (*In re Helen W.* (2007) 150 Cal.App.4th 71, 80-81.) This court must affirm a juvenile court's rejection of these exceptions if the ruling is supported by substantial evidence. (*In re Zachary G.*, *supra*, 77 Cal.App.4th at p. 809.) We review "the evidence most favorabl[e] to the prevailing party and indulg[e] in all legitimate and reasonable inferences to uphold the court's ruling." (*In re S.B.* (2008) 164 Cal.App.4th 289, 297.) Because Mother had the burden of proof, we must affirm unless there was "indisputable evidence [in her favor, which] no reasonable trier of fact could have rejected . . . ." (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 200.)

Here, for 10 months, mother visited twice a week for one hour in a supervised setting. At each visit, MGM, not mother, provided the water, food, diapers, toys, and other items for minor. Mother's visitation was never liberalized as to duration, frequency or supervision. Although mother maintained regular contact with minor, preserving the relationship would not provide such benefits to minor that would outweigh the benefits of adoption, nor would severing the parental relationship be a detriment to him.

Even if mother visited regularly and consistently, the beneficial parental relationship exception requires *both* regular visitation *and* benefit to the child. Here, mother has failed to establish benefit to the child.

A court must select adoption as the permanent plan unless it finds there is a compelling reason for determining that termination of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(i).) Mother has failed to show that

severing the natural parent-child relationship would deprive minor of a substantial, positive emotional attachment such that he would be greatly harmed. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) The required compelling reason for a finding of detriment, i.e., evidence the child would suffer great harm, is absent.

Here, minor was out of his mother's care for three months when the social worker testified at the contested disposition hearing; although mother was excited to see minor, his response was neutral, which was his response to most people. At the time of the section 366.26 hearing, minor, who was only 15 months old, had been out of mother's care for nearly 10 months. Except for the brief period that minor was in foster care while his grandparents' home was being assessed, he lived with his grandparents his entire life. Minor only lived with mother for the first five months. The stability, love and permanency provided by the maternal grandparents far outweigh maintaining a relationship with mother. The juvenile court noted: "In other words, this court is balancing the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging that a new family would confer. And there's no doubt in this case that [minor] has adapted well and is in a stable and loving and significant bond relationship with the grandparents in this matter. [¶] The Court will note that if severing this natural parent/child relationship would deprive [minor] of a substantial positive emotional attachment such that [minor] would be greatly harmed—and that's the language used, greatly harmed—the preference for adoption would then be overcome and the parents' rights not terminated. But there has been no

21

showing that [minor] would be harmed, much less greatly harmed, in this case. [¶] So the Court does not find that the parental benefit exception applies."

In sum, mother has the burden to establish the applicability of the beneficial parental relationship exception in the lower court; on appeal, she has the burden of showing that the juvenile court's ruling was an abuse of discretion. We conclude that mother has failed to meet this burden.

## DISPOSITION

The order denying the section 388 petition and the judgment terminating mother's parental rights are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.